This is an action of debt on a bond given by the defendants to indemnify the sheriff against any damage he might sustain by reason of his appointment of one of the defendants as his deputy, to wit, one Hedgpeth.
The bond was duly proved and read in evidence. The breaches assigned were: First, that H. B. Hedgpeth did so demean himself as to cause the plaintiff, the sheriff of Moore County, to be complained of, and sued in the name of the State of North *Page 357 
Carolina on the relation of Thomas J. Buchanan, on the official bond of the plaintiff as sheriff, etc., and judgment was obtained, etc. Secondly, that the said Hedgpeth received judgments and notes, as deputy of the plaintiff, to collect for Thomas J. Buchanan, and did collect the same, and did not pay over, but absconded, and remains in parts unknown. Thirdly, that the said Hedgpeth, as deputy of the plaintiff, did receive notes and judgments to collect for the said Buchanan, or return, and omitted to collect and did not return said notes and judgments, but absconded, and is still absent in parts unknown. The plaintiff then gave in evidence the record of a judgment obtained in the Superior Court of Law of Chatham County, in the name of the State of North Carolina on the relation of the said Buchanan, against the plaintiff and his sureties on (512) his official bond as sheriff. The plaintiff then offered in evidence two receipts, in the usual form for the collection of debts as deputy sheriff, which were on file among the papers of said suit in Chatham Superior Court, which original receipts the plaintiff obtained leave of the said court to withdraw from the office; and also offered to prove that those were the receipts on which the said judgment had been obtained; but the testimony was objected to by the defendants, and the court observed that the witness should then stand aside — not deciding the question of admissibility at that time; intending to permit the introduction of the said witness again, should the plaintiff show any authority in Hedgpeth from the said Buchanan to collect the said claims. The plaintiff then proved that the said two receipts were signed by the said Hedgpeth, as deputy sheriff, and offered them in evidence; but they were objected to by the defendants and excluded by the court.
The plaintiff then introduced Brently Philips and one Spivey, who stated that they had been indebted to Thomas J. Buchanan either by note or judgment, they could not recollect which; and that the said Hedgpeth brought to them the notes or judgments, he being deputy sheriff, and stated that the claims belonged to the said Buchanan, and he was collecting them, as deputy sheriff, for the said Buchanan; and that the said witness paid the said debts to the said Hedgpeth, as deputy sheriff, for the said Buchanan, some time in 1838. This testimony was objected to by the defendants, when the court decided that the plaintiff might prove the payment of the money to Hedgpeth for Buchanan; but excluded the balance of the testimony, saying the plaintiff must show in some other way that Hedgpeth was authorized to collect the claims by Buchanan. The plaintiff insisted that the acts and declarations of (513) *Page 358 
Hedgpeth, when the claims were in his hands and when he was receiving their payment from the debtors, were parts of the transaction, and were evidence showing or going to show that the claims belonged to Buchanan, and that he (Hedgpeth) had authority to collect them.
The plaintiff then introduced Angus McCaskell, and presented to him the receipt dated 1 January, 1838, being one of the receipts before referred to and made a part of this case. McCaskell said he was well acquainted with the handwriting of H. B. Hedgpeth, and that the signature to the said receipt was in the handwriting of the said Hedgpeth, and was his genuine signature; and that everything written on the face of that receipt, except "H. B. Hedgpeth, D. S.," was in the handwriting of the said McCaskell. He was then asked if he had received the judgments therein specified from Buchanan, and gave them for Buchanan and at his request to the said Hedgpeth. He said he had no recollection of either receiving the judgments from Buchanan or of delivering them to Hedgpeth. He was also asked if looking at the receipt did not refresh his memory, and enable him to say that he had received the judgments from Buchanan and delivered them to Hedgpeth. He replied, "No!" He said he had no recollection of the matter separate and apart from seeing the receipt, but, well knowing the handwriting of Hedgpeth, and seeing his signature thereto, and seeing, also, that the whole receipt was in his own handwriting, he was then confident that he had received the judgments from Buchanan, and delivered them, at his request, to Hedgpeth to be collected for Buchanan; and he had no doubt of it, and that he was then acting as an officer. To this testimony of McCaskell the defendants objected, and it was excluded by the court. His Honor then observed that he did not see how the plaintiff could get along, being informed that Buchanan had removed from (514) the State. The plaintiff insisted that the testimony of McCaskell was competent, but, under the intimation of the court, submitted to a nonsuit. The plaintiff moved for a rule on the defendants to show cause why the nonsuit should not be set aside and a new trial granted, and this being refused, the plaintiff prayed an appeal, which was granted.
The plaintiff made several exceptions upon the rejection of evidence. We put the decision upon one exception, because it is of the most general application. *Page 359 
To charge the defendants as sureties of his deputy upon a bond for the faithful discharge of his duties, the plaintiff offered in evidence a receipt, given by his deputy for the collection of claims, upon which receipt the plaintiff had been fixed with damages in the action against him.
We think the evidence was admissible. The letter of the act of 1844 does not embrace the case, but it comes within the mischief and the meaning of the act.
It had been a general practice in the Superior Courts to admit the receipts of constables and other officers as evidence against their sureties to establish the agency or undertaking to collect claims; and taking a receipt had become the mode universally adopted for the purpose of furnishing proof of that fact. This Court decided that their receipts were not admissible as evidence against sureties. S. v. Fullenwider, 26 N.C. 364. The Legislature, intending to change this rule of evidence, passed the act of 1844, declaring that such receipts should be evidence in the cases therein enumerated. The object was not to make exceptions to the rule in certain specific cases, but to change the rule itself; and, of course, the meaning was to include all cases of a similar kind and coming within the same mischief. "When there is the same reason, there is (515) the same law."
A deputy sheriff as a collecting agent stands on the same footing with a constable. Why should the receipt of a constable be evidence against his sureties, and the receipt of a deputy be evidence against the sureties of a sheriff, and yet the receipt of the deputy not evidence against his ownsureties? No reason can be given. A construction which confines an act, changing a rule of evidence, to the cases particularly enumerated would be too narrow to carry out the meaning of the Legislature.
 PER CURIAM. Nonsuit set aside, and a venire de novo to be issued.
 *Page 13